DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Allen Slayton, appeals his conviction out of the Medina County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On February 3, 2005, appellant was indicted on one count of trafficking in drugs (crack cocaine) in violation of R.C. 2925.03(A)(1)/(C)(4)(e), a felony of the second degree. The matter proceeded to trial on July 11, 2005. At the conclusion of trial, the jury found appellant guilty. The trial court sentenced appellant accordingly. Appellant timely appeals, setting forth two assignments of error for review.
 II. ASSIGNMENT OF ERROR I
"THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR MISTRIAL BASED ON PROSECUTORIAL MISCONDUCT DURING CLOSING ARGUMENT WHICH PREJUDICED DEFENDANT, WHERE THE ASSISTANT PROSECUTOR MADE REFERENCES TO DEFENDANT'S EXERCISE OF THE FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION BY DECLINING TO TESTIFY AT TRIAL AND IMPROPERLY ATTEMPTED TO SHIFT THE BURDEN OF PROOF TO THE DEFENSE."
 {¶ 3} Appellant argues that the trial court erred by denying appellant's motion for a mistrial on the basis of prosecutorial misconduct. This Court disagrees.
 {¶ 4} The decision whether to grant or deny a motion for mistrial lies in the sound discretion of the trial court and will not, therefore, be reversed absent an abuse of discretion. Statev. Garner (1995), 74 Ohio St.3d 49, 59, citing State v. Glover
(1988), 35 Ohio St.3d 18; State v. Widner (1981),68 Ohio St.2d 188, 190. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Id.
 {¶ 5} Appellant argues that a mistrial was warranted because the State made reference to appellant's failure to testify at trial notwithstanding his Fifth Amendment privilege against self-incrimination and implied that appellant had some burden of proof to show his lack of guilt.
 {¶ 6} When considering whether certain remarks constitute prosecutorial misconduct, a reviewing court must determine "(1) whether the remarks were improper and (2) if so, whether the remarks prejudicially affected the accused's substantial rights."State v. Jackson, 107 Ohio St.3d 300, 2006-Ohio-1, at ¶ 142, citing State v. Smith (1984), 14 Ohio St.3d 13, 14. The Ohio Supreme Court continued that
"[t]he touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.' This court will not deem a trial unfair if, in the context of the entire trial, it appears beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments." (Internal citations omitted.) Jackson at ¶ 142.
 {¶ 7} Appellant argues that the State improperly commented on appellant's failure to testify when the assistant prosecutor stated in closing argument that "[defense counsel] thinks he can test you at the start of the trial, that they don't have to present any evidence. There is not one cintilla [sic] of * * *." Upon appellant's objection, the trial court immediately issued a curative instruction to the jury, stating:
"The Court reminds you that Mr. Slayton has an absolute right not to testify, he is under no obligation to offer testimony. Noting [sic] in what [the assistant prosecutor] said should be construed as being in the law of Ohio, that Mr. Slayton is required to testify because he is not."
 {¶ 8} Then in response to the State, the trial court continued, "[t]hat is the implication you made, and it is not appropriate."
 {¶ 9} Appellant argues that the State then improperly attempted to shift the burden of proof to appellant, when the assistant prosecutor stated, "[t]he only way you can find him not guilty is [to] allow in evidence you don't have[.] * * * That are not supported by the evidence."
 {¶ 10} The trial court then held a sidebar conference with counsel upon appellant's objection to the State's comments. Outside the presence of the jury, appellant moved for a mistrial. The trial court denied the motion but offered to issue another curative instruction. The trial court instructed the jury as follows:
"Ladies and gentlemen, in a criminal case the burden of proof is, and remains on the State of Ohio, the State has to prove the case beyond a reasonable doubt.
"Mr. Gedrock, working as Mr. Slayton's attorney, does not have an obligation to prove anything.
"The only time that the defense has an obligation to prove something is when there is what is called an affirmative defense offered by the defense, and that did not happen.
"The burden of proof remains upon the State of Ohio.
"The Court, however, would further tell the jury that the jury should not construe any rulings the Court made during the closing argument as any kind of implication by the Court that [the assistant prosecutor] was not respecting the defendant's Constitutional right.
"The Court believes [the assistant prosecutor] respects the Constitutional rights of the defendant, and believes any implication that there was a shifting of the burden of proof was unintentional, but nevertheless, the burden of proof does remain with the State of Ohio.
"Do you all understand that?"
Both State and defense counsel asserted to the trial court that those curative instructions were satisfactory.
 {¶ 11} In addition, the trial court informed the jury prior to the commencement of closing arguments that the State has the burden of proof. The State further reiterated that it maintained the burden of proof during its closing argument. Defense counsel informed the jury during both opening statement and closing argument that the State had the burden of proving appellant's guilt beyond a reasonable doubt. Further, prior to the commencement of the State's case-in-chief, a juror asked the trial court, "Is the defendant allowed to take the stand if he chooses to[?]" The trial court replied,
"Yes, he is allowed to take the stand. He has an absolute Constitutional right not to take the stand. No inference can be drawn one way or the other. If a defendant takes the stand, his testimony is to be evaluated the same, he gets no extra credit." (Formatting edited for clarity.)
 {¶ 12} Finally, the trial court instructed the jury during jury instructions that appellant "has an absolute right under both the Ohio and Federal Constitutions not to testify. The fact that he did not testify cannot be considered by you for any purpose."
 {¶ 13} This Court finds that, while the State's remarks were improper, the remarks did not prejudicially affect appellant's substantial rights. Within the context of the entire trial, including repeated assertions by the trial court, State and defense counsel that the State has the burden of proof; the trial court's repeated general instructions that appellant had an absolute right not to testify; and the trial court's two particularized curative instructions, this Court finds that appellant's trial was not unfair because it appears beyond a reasonable doubt that the jury would have convicted appellant even in the absence of any improper remarks by the State. As more fully addressed in regard to appellant's second assignment of error, the evidence presented by the State demonstrates appellant's guilt beyond a reasonable doubt. Accordingly, the trial court did not abuse its discretion by denying appellant's motion for a mistrial on the grounds of prosecutorial misconduct. Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II
"THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUPPORT THE JURY'S GUILTY VERDICT, AND APPELLANT'S TRAFFICKING IN DRUGS (CRACK COCAINE) CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 14} Appellant argues that his conviction for trafficking in drugs (crack cocaine) was not supported by sufficient evidence and was against the manifest weight of the evidence. This Court disagrees.
 {¶ 15} A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. State v. Gulley
(Mar. 15, 2000), 9th Dist. No. 19600. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390
(Cook J., concurring). When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction.State v. Jenks (1991), 61 Ohio St.3d 259, 279.
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 16} A determination of whether a conviction is against the manifest weight of the evidence, however, does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. State v. Love, 9th Dist. No. 21654, 2004-Ohio-1422, at ¶ 11. Rather,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
A new trial should be granted, however, only in the exceptional case, where the evidence weighs heavily against the conviction. Id.
 {¶ 17} This Court has stated that "[s]ufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
 {¶ 18} Appellant was charged with one count of trafficking in drugs (crack cocaine) in violation of R.C.2925.03(A)(1)(C)(4)(e), which states that "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance[.]" In this case, the controlled substance was alleged to be crack cocaine in an amount that equals or exceeds 10 grams but is less than 25 grams.
 {¶ 19} At trial, the State presented the testimony of Agent Mark Schoonover of the Medina County Drug Task Force, who testified that he was aware of numerous complaints that appellant had been selling drugs out of his girlfriend's home. Agent Schoonover testified that appellant's cousin, who was in jail on drug charges, approached him about the opportunity to act as a confidential informant to help the task force identify other drug dealers. The agent testified that he agreed to let appellant's cousin, Michael Powell, take part in a controlled purchase of drugs from appellant.
 {¶ 20} Agent Schoonover testified that he met with Powell on September 24, 2004, wired him with a cell phone for audio transmission, thoroughly searched Powell and his vehicle, and gave him $500.00 to purchase drugs from appellant. The agent testified that Powell called appellant to set up the drug deal. Agent Schoonover and three other agents followed Powell in separate vehicles, observing him as he went to appellant's girlfriend's apartment and returned to the agreed meeting place after the drug purchase. The agent testified that Powell gave him a piece of a rock-like substance, which Agent Schoonover testified appeared to be crack cocaine, based on his experience. The agent testified that none of the four agents lost visual or auditory contact with Powell from the time he was first searched until he returned from a short visit with appellant.
 {¶ 21} Michael Powell testified that he approached Agent Schoonover with a request to act as a confidential informant and participate in a drug purchase from appellant. He testified that he hoped for a reduced sentence in exchange for his cooperation and truthful testimony.
 {¶ 22} Powell testified that he called appellant on September 24, 2004, and told appellant that he needed a half-wheel or whole wheel. Powell explained that those were references to one-half and one ounce of crack cocaine. The audio tape of Powell's conversations with appellant was played for the jury. Powell identified his voice and appellant's voice on the tape.
 {¶ 23} On the tape, appellant told Powell to come see him at his "baby's momma's house" in Medina. Powell testified that, when he arrived at appellant's girlfriend's apartment, he showed appellant the $500.00, and appellant left the room, returning with a big baggy full of crack cocaine. Powell testified that appellant broke off a piece and weighed it. Powell testified that the piece weighed 14 grams, approximately one-half ounce. He testified that he left the apartment and drove to the agreed staging area, where he gave the crack cocaine to Agent Schoonover and submitted to a search of his person and vehicle.
 {¶ 24} Agent Jennifer Smith of the Medina County Drug Task Force testified that she is the agency's evidence custodian. She testified that she removed a baggy, which had been tagged by Agent Schoonover, from the evidence locker. She testified that she then secured the baggy in the evidence room. Agent Smith testified that she took the baggy to the Bureau of Criminal Identification and Identification (BCI) in Richfield for analysis on October 5, 2004. She testified that she picked up the baggy from BCI on December 6, 2004, and returned it to the evidence room. Agent Smith testified that she again transported the baggy on June 8, 2005, this time to the prosecutor's office to accommodate appellant's request for independent testing of the evidence. She testified that she again returned the baggy to the evidence room after the independent testing was completed.
 {¶ 25} Jeffrey Houser of BCI testified that he performed three tests on the rock-like substance transported by Agent Smith. He testified that he performed a color test, microcrystalline test and instrumental analysis (FTIR). He testified that his analysis confirmed the substance to be a 13.18-gram rock of crack cocaine.
 {¶ 26} Christine Dempsey, appellant's girlfriend, testified that appellant had a key to her apartment. She denied being home on September 24, 2004, when Powell and appellant were present in her apartment. She testified that she was not aware that appellant had been selling drugs out of her home.
 {¶ 27} This Court finds that this is not the exceptional case, where the evidence weighs heavily in favor of appellant. The weight of the evidence supports the conclusion that appellant knowingly sold crack cocaine to Powell. A thorough review of the record compels this Court to find no indication that the jury lost its way and committed a manifest miscarriage of justice in convicting appellant of trafficking in drugs (crack cocaine). This Court finds that appellant's conviction is not against the manifest weight of the evidence. Having found that appellant's conviction is not against the manifest weight of the evidence, this Court further necessarily finds that there was sufficient evidence to support the jury's verdict. Consequently, appellant's second assignment of error is overruled.
 III. {¶ 28} Appellant's assignments of error are overruled. Appellant's conviction out of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
Moore, J. Boyle, J. concur.